**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| ADMIRAL INSURANCE COMPANY | ) | CIVIL ACTION |
| 7233 E. Butherus Drive | ) | |
| Scottsdale, AZ 85260 | ) | NO. _____ |
| | ) | |
| Plaintiff, | ) | COMPLAINT FOR DECLARATORY |
| | ) | JUDGMENT |
| v. | ) | |
| | ) | |
| APNJ PARTNERS, LP | ) | |
| 1100 Atlantic Ave. | ) | |
| Asbury Park, NJ  07712 | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT - ACTION FOR DECLARATORY JUDGMENT

Plaintiff Admiral Insurance Company, by and through its undersigned counsel, brings this

action for declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and in

support of the relief sought herein avers as follows:

### INTRODUCTION

1.      This action seeks a declaration that Admiral Insurance Company ("Admiral") does

not have a duty to defend or indemnify APNJ Partners, LP ("APNJ"), under three commercial

insurance policies issued by Admiral: (1) policy no. CA000042289-01, effective for the policy

period 5/12/21 to 5/12/22; (2) policy no. CA000042289-02, effective for the policy period 5/12/22

to 5/12/23; and (3) policy no. CA000042289-03, effective for the policy period 5/12/23 to 5/12/24

(collectively, the "Policies"), in relation to a civil action filed in the Superior Court of New Jersey,

Monmouth County, captioned "*Infant Plaintiffs, Izayias Jackson, Christina Jackson and Paije*

*Jackson, by their mother and natural guardian Charlotte Johnson et al. v. APNJ Partners, LP et*

*al.*", docket number "MON-L-002887-23" (the "Underlying Action").

2.      For the reasons discussed herein, Admiral owes neither a duty to defend nor indemnify APNJ in the Underlying Action.

3.      Without waiving any other coverage issue or defense, Admiral has no duty to defend or indemnify APNJ in the Underlying Action because:

a. the Policies each contain a separate self-insured retention ("SIR") of $25,000 per claim applicable on a per claimant basis and which operates as a condition precedent to coverage under the Policies; here, APNJ has provided no evidence that that the $25,000 SIRs applicable to each of the five (5) claimants in the Underlying Action have been paid;

b) the "bodily injury" and/or "property damage" alleged in the Amended Complaint occurred and manifested before the Policies' respective policy periods;

c) the Policies' pre-existing damages exclusions (discussed below) further bar coverage because the Amended Complaint seeks damages arising out of or related to "bodily injury" or "property damage" which first occurred prior to the inception date of the Policies;

d) the Policies' Long Term Exposure Exclusions (discussed below) bar coverage for the mold-related claims alleged in the Amended Complaint;

e) the damages alleged in the Amended Complaint in the Underlying Action are excluded under the "a.  Expected or Intended Injury" exclusion;

f) the Amended Complaint fails to allege a "personal and advertising injury" which is a condition precedent for any coverage provided under Coverage B of the Policies; and

g) APNJ Partners, LP is **not** listed as an insured to Admiral policy number CA000042289-03.

4.     Accordingly, Admiral requests that this Court enter judgment in its favor, and against APNJ, declaring that Admiral has no obligation to defend or indemnify APNJ in connection with the Underlying Action.

## PARTIES

5.     Plaintiff, Admiral Insurance Company is an insurance company that is incorporated in the State of Delaware and which maintains its principal place of business in Scottsdale, AZ.

6.     Upon information and belief, defendant, APNJ, is a limited partnership licensed to do business in the State of New Jersey, and which is incorporated in the State of New Jersey and maintains its principal place of business at 1100 Atlantic Avenue, Asbury Park, New Jersey 07712.

## JURISDICTION

7.     The Court has original jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) because the amount in controversy in this action exceeds the sum or value of $75,000.00, exclusive of interest and costs, and the dispute in this action is between citizens of different states.

8.     The amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, because the limits of the Policies under which APNJ seeks a defense and indemnity exceed $75,000.00.

9.     The dispute in this action is between citizens of different states.

10.     Plaintiff Admiral is a citizen of Delaware and Arizona, the states in which it, respectively, is incorporated and maintains its principal place of business.

11.     Defendant APNJ is a citizen of New Jersey, the state in which it maintains its principal place of business and it is incorporated.

3

## VENUE

12.     Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2).

13.     Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(b)(1) because upon information and belief, the defendant in this action, APNJ, maintains its principal place of business in the District of New Jersey and is incorporated in the State of New Jersey.

14.     Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to this action occurred in the District of New Jersey – in that (a) the loss giving rise to this action occurred in the District of New Jersey, and (b) the Underlying Action giving rise to this action (and for which APNJ seeks defense and indemnity) is currently pending in the Superior Court of New Jersey, Monmouth County, which is encompassed by the District of New Jersey.

## FACTS COMMON TO ALL COUNTS

### I.     The Policies

15.     Admiral Insurance Company issued several policies of insurance to its first named insured, Vitus Group LLC ("Vitus"),[1] bearing policy numbers: (1) CA000042289-01, effective for the policy period 5/12/21 to 5/12/22; (2) CA000042289-02, effective for the policy period 5/12/22 to 5/12/23; and (3) CA000042289-03,[2] effective for the policy period 5/12/23 to 5/12/24 (collectively, the "Policies").

---

[1]  The full list of named insureds is modified by Endorsement AD07850195.

[2]  APNJ Partners, LP is *not* listed as an insured under Endorsement AD07850195 of Admiral policy number "CA000042289-03."

16.     A true and correct copy of the "CA000042289-01" policy (with premium information redacted), effective for the policy period 5/12/21 to 5/12/22 is attached hereto as **Exhibit "A."**

17.     A true and correct copy of the"CA000042289-02" policy (with premium information redacted), effective for the policy period 5/12/22 to 5/12/23 is attached hereto as **Exhibit "B."**

18.     A true and correct copy of the "CA000042289-03" policy (with premium information redacted), effective for the policy period 5/12/23 to 5/12/24 is attached hereto as **Exhibit "C."**

19.     The Policies each provide certain commercial general liability coverage subject to, among other things, limits of $1,000,000 per occurrence, a $2,000,000 general aggregate limit, and a $2,000,000 products-completed operations aggregate limit.  Ex. A, 01 POLICY 04; Ex. B, 02 POLICY 005; and Ex. C, 03 POLICY 007.

20.     The Policies each also contain a Self-Insured Retention Endorsement (AI 08 75 03 21).

21.     The Self-Insured Retention Endorsement in each Policy provides that the Policies' limits apply "in *excess* of your 'self-insured retention'" and that "[i]t *is a condition precedent to coverage under this policy that you will make actual payment of damages and 'expenses' payable under the 'self-insured retention.'*" (emphasis added).  Ex. A, 01 POLICY 81; Ex. B, 02 POLICY 087; and Ex. C, 03 POLICY 099.

22.     The Self-Insured Retention Endorsement in each Policy provides the following schedule, terms, and conditions associated with that self-insured retention:

**Schedule**

| "Self-Insured Retention" | $ | 25,000 | Per Claim or Offense – Other than Products and Completed Operations |
|---|---|---|---|
| | $ | 25,000 | Per Claim – Products and Completed Operations |
| | $ | N/A | Per Occurrence or Offense – Other than Products and Completed Operations |
| | $ | N/A | Per Occurrence – Products and Completed Operations |
| | $ | N/A | Annual Aggregate – Other than Products and Completed Operations |
| | $ | N/A | Annual Aggregate – Products and Completed Operations |
| | $ | N/A | Annual Aggregate – Products and Completed Operations/Other than Products and Completed Operations - Combined |

This insurance is subject to the following additional provisions. In the event of conflict with any provision elsewhere in this policy, the provisions of this endorsement will control the application of insurance to which the coverage provided by this policy applies.

1.      Our total liability for all damages will not exceed the Limits of Insurance shown in the Declarations and the Limits of Insurance shown in the Declarations will apply in excess of your "self-insured retention".

It is a condition precedent to coverage under this policy that you will make actual payment of damages and "expenses" payable under the "self-insured retention". The "self-insured retention" must be paid by you, and may not be offset or reduced by contributions or recoveries from others. Payments by others, including but not limited to additional insureds or insurers, will not satisfy the "self-insured retention".

The "self-insured retention" payable by you under this policy applies to this policy only, and will not be satisfied or reduced by amounts you pay or have paid to satisfy your obligations under any other policy.

If the "self-insured retention" is subject to an annual aggregate, the entire aggregate amount shall be payable by you, even if the policy is terminated earlier than one year after the beginning of the policy period. If the policy period is longer than one year, the annual aggregate will apply separately to each consecutive annual period and to any remaining period of less than one year, starting with the beginning of the policy period.

2.      "Expenses" incurred are:

        Included in the "self-insured retention"

6

Payable by you in addition to the "self-insured retention"

3.      We have the right in all cases, at our expense, to assume charge of the defense and/or settlement of any claim where we reasonably determine the settlement value or verdict potential exceeds your "self-insured retention", and upon written request from us, you will tender such portion of the remaining "self-insured retention" as we may deem necessary to complete the settlement of such claim. Should you refuse to contribute toward that settlement and require us to continue with "legal proceedings", then we will, from the date of your refusal to settle, be relieved of any obligation hereunder to pay an amount greater than the amount we would have paid if you had agreed to the settlement. Further, we will not be obligated to pay or contribute to any "expenses" related to such "legal proceedings" after your refusal to settle.

Should your "self-insured retention" be exhausted by payment of damages and/or "expenses", we will assume charge of the defense and settlement of any covered claim. At our discretion, we may substitute counsel of our choosing to continue with your defense, or we may continue with counsel originally chosen by you, but at hourly rates commensurate with our panel counsel and according to our written Billing Practices and Procedures for Claim Litigation.

SECTION IV, CONDITIONS, paragraph 2. DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT of the Coverage Form shall apply whenever a claim involves any of the following characteristics:

(a)      Your incurred amounts (reserves and paid) for any individual claim reach 50% of the "self-insured retention" or $25,000, whichever is less.
(b)      Fatality.
(c)      Serious "bodily injury", including but not limited to, amputation, paralysis, brain damage or any cognitive or neurological disorders, second or third degree burns, total loss of sight in one or both eyes, sexual assault, or any "bodily injury" involving a permanent injury of any kind.
(d)      Serious "property damage" or "personal and advertising injury"(if insured by this policy).
(e)      Punitive damages (whether or not insured by this policy).
(f)      Complaints/Petitions in which the amount requested exceeds the Limits of Insurance of our policy.
(g)      A potential dispute exists with respect to whether coverage is provided by our policy for the claim.

4. You must provide loss runs to us quarterly, or more frequently if requested in writing by us. The loss runs must include the following information for all claims and incidents that may be reasonably expected to result in claims:

a.      Claim number assigned by you or the Third Party Administrator (TPA).

     b.      Claimant's name.
     c.      Litigation (yes/no).
     d.      Defense Counsel (firm name, address, and telephone number)-if applicable.
     e.      Date and location of loss.
     f.      Nature of injury/damages.
     g.      Description of loss.
     h.      Indemnity and expense reserves/payments (per claim and aggregate).

5. Your bankruptcy, insolvency or inability to pay the "self-insured retention" will not relieve us of or increase our obligations under this policy. In the event of your bankruptcy, insolvency or inability to pay the "self-insured retention":

     a.      We will have the right but not the duty to defend a covered claim or "suit" at our own expense;
     b.      This policy will not replace the "self-insured retention"; and
     c.      Our Limits of Insurance will only apply in excess of the "self-insured retention".

6.      Should the estimated settlement value or verdict potential of any claim or incident appear likely to exceed the "self-insured retention", no "expenses" may be incurred or offered by you on our behalf without prior written consent from us.

7.      At our discretion, we may elect to monitor any claim file handled by you, the TPA or your chosen defense counsel. In that event, all parties agree to extend their full cooperation to us, or to our designee, regarding the reporting and communication to us of ongoing investigations and/or discovery.

8.      At our discretion, we may elect to conduct an audit of any claim file handled by you, the TPA or your chosen defense counsel. In that event, all parties agree to extend their full cooperation to us, or to our designee, by making their claim files fully accessible for our review. We shall be permitted to copy, at our cost, any document related to the investigation or defense of any claim.

9.      If you have rights to recover all or part of any payment made by you or us under this insurance, or any payment we or you are obligated to pay, those rights are transferred to us. You must do nothing before or after loss to impair them without our written consent. At our request, you will bring suit or transfer those rights to us and help us enforce them.

10.     The "self-insured retention" applies to the coverage option and basis indicated by the placement of the "self-insured retention" amount in the Schedule above. The "self-insured retention" applies as follows:

a.      If the "self-insured retention" indicated in the Schedule above is on a Per Claim or Offense basis, the "self-insured retention" applies to all damages sustained by any one person because of:

(1)      "Bodily injury" and "property damage" as the result of any one "occurrence"; and
(2)      "Personal and advertising injury" as the result of any one offense.

If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate "self-insured retention" will apply to each person making a claim for such damages.

With respect to "property damage" and "personal and advertising injury", person includes an organization.

b.      If the "self-insured retention" indicated in the Schedule above is on a Per Occurrence or Offense basis, the "self-insured retention" applies to all damages because of:

(1) "Bodily injury" and "property damage"; and
(2) "Personal and advertising injury";

as the result of any one "occurrence" or offense, regardless of the number of persons or organizations who sustain damages because of that "occurrence" or offense.

c.      If the "self-insured retention" is indicated in the Schedule above as subject to an Annual Aggregate, the Annual Aggregate will be the maximum amount payable by you for all "occurrences", claims and offenses to which this insurance applies, unless the policy period is longer than one year. In that event, the Annual Aggregate will apply separately to each consecutive annual period and to any remaining period of less than one year, starting with the beginning of the policy period.

11.      Definitions

a. "Expenses" means all costs and expenses listed under Supplementary Payments and includes, but is not limited to, amounts incurred by us or you for the investigation or defense of any claim or "suit"; however, "expenses" does not include TPA fees.
b. "Legal proceedings" means trial court proceedings and appeals, and alternative dispute resolution proceedings.
c. "Self-insured retention" means the amount shown in the Schedule, which you are obligated to pay, and only includes amounts paid for injury or damage and/or "expenses" to which this insurance applies.

9

Ex. A, 01 POLICY 81-83; Ex. B, 02 POLICY 087-089; and Ex. C, 03 POLICY 099-101.

23.     Coverage A to the Commercial General Liability Coverage Form (CG 00 01 04 13) of the Policies provides, in part, with respect to its grant of coverage:

**1.  Insuring Agreement**

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1)  The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2)  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b.  This insurance applies to "bodily injury" and "property damage" only if:

(1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)  The "bodily injury" or "property damage" occurs during the policy period; and

(3)  Prior to the policy period, no insured listed under Paragraph 1. of Section II — Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such

"bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

\* \* \*

Ex. A, 01 POLICY 09; Ex. B, 02 POLICY 010; and Ex. C, 03 POLICY 013.

24.    SECTION V – DEFINITIONS of the Commercial General Liability Coverage Form (CG 00 01 04 13) provides the following definitions for "bodily injury," "occurrence," and "property damage" as follows:

\* \* \*

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

17. "Property damage" means:

a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

\* \* \*

Ex. A, 01 POLICY 20; Ex. B, 02 POLICY 021; and Ex. C, 03 POLICY 024.

25.    Coverage B to the Commercial General Liability Coverage Form (CG 00 01 04 13) of the Policies provides as follows with respect to its grant of coverage:

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

        (1) The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

        (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

    **b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

Ex. A, 01 POLICY 14; Ex. B, 02 POLICY 015; and Ex. C, 03 POLICY 018.

    26.    SECTION V – DEFINITIONS of the Policies define "personal and advertising injury" as:

    14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    a.  False arrest, detention or imprisonment;
    b.  Malicious prosecution;
    c.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
    d.  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
    e.  Oral or written publication, in any manner, of material that violates a person's right of privacy;

    f.   The use of another's advertising idea in your "advertisement"; or

    g.   Infringing upon another's copyright, trade dress or slogan in your "advertisement".

Ex. A, 01 POLICY 22; Ex. B, 02 POLICY 023; and Ex. C, 03 POLICY 026.

27.    Further, Coverage A of the Policies contains the following exclusion:

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

Ex. A, 01 POLICY 10; Ex. B, 02 POLICY 013; and Ex. C, 03 POLICY 014.

28.    The Policies' pre-existing damages exclusions which are contained in two forms: the SPECIAL EXCLUSIONS – JOINT FORM endorsement (AD 68 88 12 13) and the SPECIAL EXCLUSIONS –JOINT FORM (OCCURRENCE) endorsement (AD 68 88 03 21). Ex. A, 01 POLICY 70; Ex. B, 02 POLICY 076; and Ex. C, 03 POLICY 084.

29.    The CA000042289-01 policy, effective from 5/12/21 to 5/12/22, contains the SPECIAL EXCLUSIONS – JOINT FORM endorsement (AD 68 88 12 13) which provides:

**PRE-EXISTING DAMAGE EXCLUSION**

It is agreed under **Section 1 Coverages, Coverage A Bodily Injury** and **Property Damage Liability, 1. Insuring Agreement**, Paragraphs **b (3), c** and **d** are deleted in their entirety and the following exclusion is added to this policy:

This insurance does not apply to:

**1.**    Any damages arising out of or related to "bodily injury" or "property damage", whether such "bodily injury" or "property damage" is known or unknown,

> **(a)** which first occurred prior to the inception date of this policy (or the retroactive date of this policy, if any; whichever is earlier); or
>
> **(b)** which are, or are alleged to be, in the process of occurring as of the inception date of the policy (or the retroactive date of this policy, if any; whichever is earlier) even if the "bodily injury" or "property damage" continues during this policy period.

> **2.** Any damages arising out of or related to "bodily injury" or "property damage", whether known or unknown, which are in the process of settlement, adjustment or "suit" as of the inception date of this policy (or the retroactive date of this policy, if any; whichever is earlier).

> We shall have no duty to defend any insured against any loss, claim, "suit", or other proceeding alleging damages arising out of or related to "bodily injury" or "property damage" to which this endorsement applies.

Ex. A, 01 POLICY 69-70.

30. Similarly, the SPECIAL EXCLUSIONS –JOINT FORM (OCCURRENCE) endorsement (AD 68 88 03 21) contained within the "CA000042289-02" policy, effective from 5/12/22 to 5/12/23 and the "CA000042289-03" policy, effective from 5/12/23 to 5/12/24, provides:

### PRE-EXISTING DAMAGE EXCLUSION

> It is agreed under **Section 1 Coverages, Coverage A Bodily Injury** and **Property Damage Liability, 1. Insuring Agreement,** Paragraphs **b (3), c** and **d** are deleted in their entirety and the following exclusion is added to this policy:

> This insurance does not apply to:

> **1.** "Bodily injury" or "property damage", whether such "bodily injury" or "property damage" is known or unknown,

> > **(a)** which first occurred prior to the inception date of this policy (or the retroactive date of this policy, if any; whichever is earlier); or
> >
> > **(b)** which are, or are alleged to be, in the process of occurring as of the inception date of the policy (or the retroactive date of this policy, if any; whichever is earlier) even if the "bodily injury" or "property damage" continues during this policy period.

> **2.** Any damages arising out of or related to "bodily injury" or "property damage", whether known or unknown, which are in the process of

settlement, adjustment or "suit" as of the inception date of this policy (or the retroactive date of this policy, if any; whichever is earlier).

We shall have no duty to defend any insured against any loss, claim, "suit", or other proceeding alleging damages arising out of or related to "bodily injury" or "property damage" to which this endorsement applies.

Ex. B, 02 POLICY 074; Ex. C, 03 POLICY 084-085.

31. Additionally, the Policies each contain an endorsement barring coverage arising out of, related to, caused by, contributed to by, or in any way connected with actual, alleged or threatened past, present or future claims arising in whole or in part, either directly or indirectly, out of the exposure to, presence of, formation of, existence of or actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any microorganisms, biological organisms or organic contaminants, including but not limited to mold, mildew, fungus, bacteria, bacterium, spores, yeast or other toxins.

32. The CA000042289-01 policy, effective from 5/12/21 to 5/12/22, contains the Long Term Exposure Exclusions – Joint Form (AD 68 83 04 13) which provides in pertinent part:

**MICROORGANISMS, BIOLOGICAL ORGANISMS OR ORGANIC CONTAMINANTS EXCLUSION (GENERAL LIABILITY BROAD FORM)**

This insurance does not apply to:

**(1)** Liability, injury or damages of any kind, to include but not limited to "bodily injury", "property damage" or " personal and advertising injury", including costs or expenses, actually or allegedly arising out of, related to, caused by, contributed to by, or in any way connected with actual, alleged or threatened past, present or future claims arising in whole or in part, either directly or indirectly, out of the exposure to, presence of, formation of, existence of or actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any microorganisms, biological organisms or organic contaminants, including but not limited to mold, mildew, fungus, spores, yeast or other toxins, allergens, infectious agents, wet or dry rot or rust, or materials of any kind containing them at any time, regardless of the cause of growth, proliferation or secretion; or

**(2)** Any loss, cost or expense arising out of any:

    **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of microorganisms, biological organisms or organic contaminants, including but not limited to mold, mildew, fungus, spores, yeast, or other toxins, allergens, infectious agents, wet or dry rot or rust, or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion.

    **(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of microorganisms, biological organisms or organic contaminants, including but not limited to mold, mildew, fungus, spores, yeast, or other toxins, allergens, infectious agents, wet or dry rot or rust, or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion.

We shall have no duty to investigate, defend or indemnify any insured against any loss, claim, "suit" or other proceeding alleging injury or damages of any kind, to include but not limited to "bodily injury", "property damage" or "personal injury and advertising injury" to which this endorsement applies.

Ex. A, 01 POLICY 57.

33.    Similarly, the "CA000042289-02" policy effective from 5/12/22 to 5/12/23 and the "CA000042289-03" policy effective from 5/12/23 to 5/12/24 both contain the Exclusionary Joint Form – Asbestos, Lead, Microorganisms, Silica & EMR endorsement (AD 68 83 06 21) which provides:

### MICROORGANISMS, BIOLOGICAL ORGANISMS OR ORGANIC CONTAMINANTS EXCLUSION (GENERAL LIABILITY BROAD FORM)

This insurance does not apply to:

**(1)** Liability, injury or damages of any kind, to include but not limited to "bodily injury", "property damage" or "personal and advertising injury", including costs or expenses, actually or allegedly arising out of, related to, caused by, contributed to by, or in any way connected with actual, alleged or threatened past, present or future claims arising in whole or in part, either

16

directly or indirectly, out of the exposure to, presence of, formation of, existence of or actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any microorganisms, biological organisms or organic contaminants, including but not limited to mold, mildew, fungus, bacteria, bacterium, spores, yeast or other toxins, allergens, infectious agents, wet or dry rot or rust, or materials of any kind containing them at any time, regardless of the cause of growth, proliferation or secretion; or

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of microorganisms, biological organisms or organic contaminants, including but not limited to mold, mildew, fungus, spores, yeast, or other toxins, allergens, infectious agents, wet or dry rot or rust, or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion.

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of microorganisms, biological organisms or organic contaminants, including but not limited to mold, mildew, fungus, spores, yeast, or other toxins, allergens, infectious agents, wet or dry rot or rust, or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion.

We shall have no duty to investigate, defend or indemnify any insured against any loss, claim, "suit" or other proceeding alleging injury or damages of any kind, to include but not limited to "bodily injury", "property damage" or "personal injury and advertising injury" to which this endorsement applies.

Ex. B, 02 POLICY 062; Ex. C, 03 POLICY 068.

## II.     The Underlying Action

34.     On or about February 23, 2024, *Infant Plaintiffs, Izayias Jackson, Christina Jackson and Paije Jackson, by their mother and natural guardian Charlotte Johnson et al. v. APNJ Partners, LP et al.* filed an Amended Complaint in the Superior Court of New Jersey, Monmouth County, New Jersey (the "Underlying Action").

35.    A true and correct copy of the Amended Complaint from the Underlying Action is attached hereto as **Exhibit "D."**

36.    Three of the plaintiffs in the Underlying Action, Izayias Jackson, Christina Jackson and Paije Jackson, are the minor-children of plaintiffs Charlotte Johnson and Derrick Jackson. Am. Compl. at ¶¶ 1-5.  (Izayias Jackson, Christina Jackson, Paije Jackson, Charlotte Johnson and Derrick Jackson are collectively referred to herein as "Plaintiffs").

37.    The Amended Complaint states that "[o]n or about September 7, 2017, Plaintiffs entered into a written Lease with Defendants for the renting and occupancy of . . . a residential home located at 1100 Atlantic Avenue, Asbury, NJ 07712 for their family (the 'Subject Property')."  Ex. D, ¶ 22.

38.    The Amended Complaint states that the annual lease between the parties was renewed annually until it was terminated by a Notice to Quit issued by Defendants on or about January 1, 2022."  Ex. D, ¶¶ 25-27 (emphasis added).

39.    Defendants reportedly leased the Subject Property to the Plaintiffs, Charlotte Johnson, Derrick Jackson, and their three children Izayias Jackson, Christian Jackson and Paije Jackson, who were tenants properly residing in the apartment.   Ex. D, ¶ 28.

40.    The Amended Complaint avers that "[i]n or about 2019 and continuing thereafter, Plaintiffs, Charlotte Johnson and Derrick Jackson, began experiencing health issues including, without limitation, chronic cough, chronic fatigue, chest tightness, brain fogginess, and skin rash. In or around the same time in 2019, the Infant Plaintiffs, Izayias Jackson, Christian Jackson and Paije Jackson, began experiencing health issues including, without limitation, chronic cough and congestion. Ex. D, ¶ 34.

41.     The Amended Complaint states that "[p]rior to moving into the Subject Property, Infant Plaintiff, Christian Johnson, who has autism, was mobile, alert and was meeting developmental milestones."  Ex. D, ¶ 28.

42.     The Amended Complaint avers that "[i]n or about 2019 and continuing through October 2021, Infant Plaintiff Christian Johnson's development declined significantly. He was less mobile, experienced difficulties with alertness and was no longer meeting developmental milestones."  Ex. D, ¶ 37.

43.     Plaintiffs further allege that "[i]n 2019, Plaintiffs discovered certain conditions and defects in the Subject Property that had the potential to expose them to illness, danger, and harm. Ex. D, ¶ 39.

44.      Specifically, the Amended Complaint avers that, in 2019, Plaintiffs found rings of black mold underneath the carpets in the apartment."  Ex. D, ¶¶ 39-40.

45.     The Amended Complaint goes on to claim that "Plaintiffs immediately advised Defendants about the moldy carpets in their apartment. Defendants responded by removing the moldy carpets and installing non-absorbent vinyl flooring at which time Plaintiffs needed to stay in a hotel for a week until the flooring was replaced."  Ex. D, ¶ 41.

46.     According to the Amended Complaint, Defendants represented to Plaintiffs that the mold issue was remediated and that it was safe for Plaintiffs to return to the Subject Property without investigating the source of any mold to determine whether it was toxic and performing any necessary remediation.  Ex. D, ¶ 42.

47.     The Amended Complaint alleges, however, that "this 'quick fix' of removing the carpets did not remediate the toxic mold issue within the apartment and the Plaintiffs unknowingly continued to live in the apartment for the next two (2) years."  Ex. D, ¶ 43.

19

48.     According to the Amended Complaint, "[r]elying upon Defendants' material misrepresentations that the mold in the apartment was removed, and was thus safe and habitable, Plaintiffs continued to live in the apartment." Ex. D, ¶ 45.

49.     Plaintiffs claim to have subsequently "contacted the Monmouth County Health Department ('MCHD') and the Asbury Park Department of Code Enforcement ('APDCE') complaining of Defendants' refusal to remediate the mold issue in the apartment and to find out information so she could address the health issues her family was experiencing." Ex. D, ¶ 49.

50.     The Amended Complaint also states that "[d]uring the course of the investigation, Investigator[s] became aware that Defendants attempted to repair a broken downspout and installed non-absorbent flooring in the areas of concern regarding mold and other toxins." Ex. D, ¶ 51.

51.     Plaintiffs aver that "moisture readings and humidity readings were taken by the MCHD, finding that humidity inside Plaintiffs' apartment unit was 69%, a level that promotes mold growth at a rapid rate." Ex. D, ¶ 55.

52.     Plaintiffs also claim that "[v]isible mold was also noted inside the bathroom vanity." Ex. D, ¶ 60.

53.     According to the Amended Complaint, "[a]fter speaking with the Asbury Park Code Enforcement and the apartment complex's super, a contractor was called to remove the bathroom vanity as well as two feet of sheetrock in the main bedroom. The area was to remain exposed until the ground outside was leveled and the water infiltration issue was resolved." Ex. D, ¶ 60.

54.     According to the Amended Complaint, "[o]n September 10, 2021, Wysokinski revisited the Subject Property [to] ensure that the work was done or that the changes to the ground

outside and water infiltration were in the process of being made. Instead, he found that the yard area was not yet leveled and was still improperly sloping toward the area of concern. No progress had been made." Ex. D, ¶ 62.

55.     According to the Amended Complaint, "[i]n or about September 2021, infant Plaintiff, Christian Jackson, began experiencing worsening symptoms, including but not limited to, various respiratory illnesses, rashes and fatigue." Ex. D, ¶ 63.

56.     According to the Amended Complaint, "[i]n or about September 2021, because infant Plaintiff, Christian Jackson's developmental progress continued to decline, his pediatrician referred him to a neurologist, for testing which he had never been treated for prior to residing in the apartment." Ex. D, ¶ 64.

57.     The Amended Complaint further states that "[o]ut of concern for their son's wellbeing and in an attempt to determine the cause of his various illnesses, Plaintiffs searched for and discovered black mold growth in their living room wall. Plaintiffs found mold in every room of their apartment, including the under the bathroom vanity and in the bedrooms, kitchen and living room." Ex. D, ¶ 65.

58.     Plaintiffs claim that "[d]uring the latter part of the month of September 2021, Plaintiffs were forced to live in their car for several days, and then after raising enough money from local churches, family and advancements from Plaintiff Derrick Jackson's job, Plaintiffs spent another several days in a one-bedroom motel at cost of $150.00 per night. . . On various occasions, Plaintiffs complained to Defendants that the apartment showed signs and evidence of mold, fungus and toxins." Ex. D, ¶¶ 67-69.

59.     The Plaintiffs further aver that "[o]n September 2, 2021, a Violation Notice was issued to Defendant APNJ from the Asbury Park City Code Enforcement for violations of

improper rain drainage, unsanitary interior surfaces and unsanitary stairs and walking surfaces." Ex. D, ¶ 61.

60.     The Amended Complaint states that "[w]ith no redress in sight, in or about September 2021, Plaintiffs contacted an attorney and hired a mold investigator and remediator, GreenWorks, to conduct a mold and/or toxin inspection and testing of their apartment." Ex. D, ¶ 72.

61.     The Amended Complaint states that "[o]n September 9, 2021, GreenWorks conducted an inspection and testing for mold and other toxins in the subject apartment. At the time of the inspection, GreenWorks determined that Defendants' maintenance crew replaced the drywall only in the bedroom and the bathroom vanity and failed to investigate any further or make any attempt to remediate the mold issue in the rest of the residence and Subject Property." Ex. D, ¶ 73.

62.     The Plaintiffs allege that "[a]s a result, in October 2021, Plaintiffs were forced to vacate their apartment, and temporarily moved to a local motel until they relocated to South Carolina to live with family members." Ex. D, ¶ 77.

63.     The Amended Complaint states that "[o]n November 4, 2021, Plaintiffs' mold investigator and expert, Victor J. Coppola, of GreenWorks, issued a report which stated, without limitation, that several types of toxic mold were present in the apartment at unacceptable levels, including Aspergillus/Penicillium, Chaetomium and Stachybotrys, which are known to have negative human health impact associated with their production of mycotoxins." Ex. D, ¶ 78.

64.     The Amended Complaint alleges that "Mr. Coppola's report also stated that the exterior moisture intrusion existing on Defendants' property was a direct result of Defendants' negligent moisture management/property maintenance practices." Ex. D, ¶ 79.

65.    The Amended Complaint alleges that the Defendants collectively were "responsible for the proper repair and/or maintenance of the Subject Property" and "had a duty to provide, maintain and/or repair the Subject Property as a safe premises, free from defects or hazardous conditions."  Ex. D, ¶ 30.

66.    Despite this, the Amended Complaint alleges that "[f]ollowing the hurricanes and tropical storms in recent years, including Tropical Storm Ida which hit New Jersey in September 2021, the Subject Property was impacted and exposed to significant water flooding and interior and exterior damage."  Ex. D, ¶ 31.

67.    The Amended Complaint avers that "[f]ollowing this water damage, Defendants failed to properly remediate the Subject Property for potential deadly mold infestation and other toxins."  Ex. D, ¶¶ 31-32.

68.    The Amended Complaint avers that "[i]n addition, a faulty rain drainage system and improper grading behind their apartment unit created a water infiltration issue, allowing water to seep through to the Subject Property."  Ex. D, ¶ 33.

69.    The Amended Complaint further alleges that "[d]espite Plaintiffs' complaints and the known dangers and harmful conditions of certain mold and other related toxic agents, Defendants willfully, recklessly and/or negligently failed and refused to perform proper and necessary repairs to ensure the home was safe for Plaintiffs to inhabit", and as a result, ". . . Plaintiffs were grossly exposed to, suffered and experienced the effects of the toxic conditions water while living and sleeping in the Subject Property."  Ex. D, ¶¶ 84, 87.

70.    The Amended Complaint pleads six (6) counts against all of the named Defendants: Count One for "Personal Injuries, Mold, and other Toxic Exposure to Plaintiffs"; Count Two for

"Breach of Contract"; Count Four for "Common Law Breach of Contract Warranties"[3]; Count Five for "Consumer Fraud – Material Misrepresentation in the Leasing of Real Property"); Count Six for "Consumer Fraud – Unconscionable Business Practices on Behalf of All Plaintiffs"; and Count Seven for "Demand for Attorneys' Fees".  Counts Six and Seven seek attorneys' fees in connection with the Plaintiffs prosecuting the Lawsuit.  Relatedly, Count Seven, by way of Counts Five and Six, seeks treble damages in association with violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2 *et seq.*

## III.   APNJ's Tender For Defense And Indemnity in the Underlying Action

71.     APNJ has requested that Admiral defend and indemnify APNJ in the Underlying Action pursuant to the terms and conditions of the Policies.

72.     APNJ provided notice of the Underlying Action to Admiral.

73.     By letter dated May 10, 2024, Admiral denied any duty to defend or indemnify APNJ in the Underlying Action.

74.     Admiral further advised APNJ that Admiral will not be appointing counsel to defend APNJ in the Underlying Action, nor will Admiral pay any judgment, award or settlement in the Litigation based upon the facts known at this time.

75.     Upon information and belief, APNJ disagrees with Admiral's coverage determination.

76.     Upon information and belief, APNJ continues to maintain that Admiral has a duty to defend and/or indemnity APNJ in the Underlying Action.

77.     As such, an actual, justiciable controversy exists between the parties.

---

[3]  The Amended Complaint in the Underlying Action erroneously fails to include a "Count Three."

78.    For the reasons discussed herein, Admiral does not have a duty to defend or indemnify APNJ for the Underlying Action – and, thus, Admiral is entitled to a judicial declaration that is has no duty to defend or indemnify APNJ in the Underlying Action.

## COUNT I – DECLARATORY JUDGMENT
### (Admiral Has No Duty To Defend APNJ In The Underlying Action)

79.    Admiral realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

80.    Admiral has no duty to defend APNJ in the Underlying Action under any of the Policies.

81.    "In New Jersey, the 'duty to defend comes into being when the complaint states a claim constituting a risk insured against.'" *Montville Twp. Bd. of Educ. v. Zurich Am. Ins. Co.*, 783 F. App'x 235, 239 (3d Cir. 2019) (quoting *Voorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255, 1259 (N.J. 1992)).  "Whether an insurer has a duty to defend is determined by comparing the allegations in the complaint with the language of the policy. When the two correspond, the duty to defend arises, irrespective of the claim's actual merit." *Id.*

82.    Each of the Policies contain a Self-Insured Retention Endorsement (AI 08 75 03 21). *See* Ex. A, 01 POLICY 81-83; Ex. B, 02 POLICY 087-089; and Ex. C, 03 POLICY 099-101.

83.    Each of the Policies is subject to a self-insured retention ("SIR") of $25,000 per claim, per claimant.  *See* Ex. A, 01 POLICY 81-83; Ex. B, 02 POLICY 087-089; and Ex. C, 03 POLICY 099-101.

84.    There are five claimants in the Underlying Action.

85.    Because there are five (5) claimants in the Amended Complaint, the combined SIR for each Policy is $125,000.  *See* Ex. A, 01 POLICY 81-83; Ex. B, 02 POLICY 087-089; and Ex. C, 03 POLICY 099-101.

86.     Further, the Self-Insured Retention Endorsement (AI 08 75 03 21) to each of the Policies provides that the Policies' limits apply "in *excess* of your 'self-insured retention'" and that "[i]t *is a condition precedent to coverage under this policy that you will make actual payment of damages and 'expenses' payable under the "self-insured retention.*" (emphasis added).  Ex. A, 01 POLICY 81-83; Ex. B, 02 POLICY 087-089; and Ex. C, 03 POLICY 099-101.

87.     To date, despite request, APNJ has provided no (0) evidence that any Policies' $125,000 combined SIR has been paid.

88.     Payment of the applicable SIR(s) is a condition precedent for coverage under the Policies.

89.     Admiral's coverage obligations, if any, are not implicated because the applicable SIRs to the Policies have not been paid.

90.     As such, Admiral has no present duty to defend APNJ in the Underlying Action.

91.     Admiral is entitled to a declaratory judgment that it has no potential defense obligation to APNJ in the Underlying Action unless and until the $125,000 combined SIR (for any one Policy) has been satisfied through payment of damages and/or "expenses" as defined by the Policies.

92.     Additionally, Admiral has no defense obligation to APNJ with respect to the Underlying Action because the "bodily injury" and/or "property damage" alleged in the Amended Complaint occurred and manifested before the Policies incepted.

93.     Pursuant to the terms and conditions of Coverage A to the Policies, that coverage applies only to, among other things, "bodily injury" and/or "property damage" caused by an "occurrence" and which injury or damage occurs *during the policy period*, and within the coverage territory.

94.     The Amended Complaint avers that "bodily injury" and "property damage" occurred *before* the Policies incepted.

95.     The Amended Complaint alleges, among other things, that:

> 34. In or about 2019 and continuing thereafter, Plaintiffs, Charlotte Johnson and Derrick Jackson, began experiencing health issues including, without limitation, chronic cough, chronic fatigue, chest tightness, brain fogginess, and skin rash.
>
> 35. In or around the same time in 2019, the Infant Plaintiffs, Izayias Jackson, Christian Jackson and Paije Jackson, began experiencing health issues including, without limitation, chronic cough and congestion.
>
> * * *
>
> 37. In 2019, Plaintiffs discovered certain conditions and defects in the Subject Property that had the potential to expose them to illness, danger, and harm.
>
> 38. Specifically, in 2019, Plaintiffs found rings of black mold underneath the carpets in the apartment.

Ex. D, ¶¶ 34-35, 37-38.

96.     Thus, the Amended Complaint alleges the "bodily injury" and "property damage" occurred and manifested in 2019, well-before the first policy of the Policies, CA000042289-01 (effective from 5/12/21 to 5/12/22) incepted.  *See* Ex. A, 01 POLICY 04; Ex. D, ¶¶ 34-35, 37-38.

97.     Upon information and belief, one or more of the Plaintiffs suffered bodily injury prior to May 12, 2021 which injury plaintiffs contend was caused by APNJ.

98.     Upon information and belief, the Plaintiffs' residence suffered property damage prior to May 12, 2021 which damage Plaintiffs contend was caused by APNJ.

99.     Accordingly, Admiral does not owe APNJ a defense in the Underlying Action because the "bodily injury" and/or "property damage" at issue occurred and manifested prior to the APNJ Policies' policy periods.  *See* Ex. A, 01 POLICY 04; Ex. D, ¶¶ 34-35, 37-38.

100.     Additionally, Admiral has no defense obligation to APNJ with respect to the Underlying Action due to the Policies' pre-existing damages exclusions which are contained in two forms: the SPECIAL EXCLUSIONS – JOINT FORM endorsement (AD 68 88 12 13) and the SPECIAL EXCLUSIONS –JOINT FORM (OCCURRENCE) endorsement (AD 68 88 03 21).

101.     The Amended Complaint alleges that "bodily injury" and "property damage" occurred *before* the Policies incepted.  For example, the Amended Complaint alleges that:

> 34. In or about 2019 and continuing thereafter, Plaintiffs, Charlotte Johnson and Derrick Jackson, began experiencing health issues including, without limitation, chronic cough, chronic fatigue, chest tightness, brain fogginess, and skin rash.
>
> 35. In or around the same time in 2019, the Infant Plaintiffs, Izayias Jackson, Christian Jackson and Paije Jackson, began experiencing health issues including, without limitation, chronic cough and congestion.
>
> * * *
>
> 37. In 2019, Plaintiffs discovered certain conditions and defects in the Subject Property that had the potential to expose them to illness, danger, and harm.
>
> 38. Specifically, in 2019, Plaintiffs found rings of black mold underneath the carpets in the apartment.

Ex. D, ¶¶ 34-35, 37-38.

102.     However, the first of the Policies, CA000042289-01, incepted on 5/12/21, well after the Amended Complaint alleges the mold, "bodily injury" and "property damage" first occurred and manifested in 2019.  *See* Ex. A, 01 POLICY 69; Ex. B, 02 POLICY 074; Ex. C, 03 POLICY 084-085; Ex. D, ¶¶ 34-35, 37-38.

103.     Accordingly, Admiral does not owe APNJ a defense in the Underlying Action because the injury and damage at issue are alleged to have occurred and manifested prior to the APNJ Policies' policy periods and thus is additionally barred by the Pre-Existing Damage

28

Exclusion in the Policies.  *See* Ex. A, 01 POLICY 69; Ex. B, 02 POLICY 074; Ex. C, 03 POLICY 084-085; Ex. D, ¶¶ 34-35, 37-38.

104.    Additionally, Admiral has no defense obligation to APNJ with respect to the Underlying Action due to the Policies' Long Term Exposure Exclusions – Joint Form (AD 68 83 04 13) and Exclusionary Joint Form – Asbestos, Lead, Microorganisms, Silica & EMR (AD 68 83 06 21) Endorsements.

105.    The Amended Complaint alleges that black mold manifested in the Subject Property as early as 2019, that the Defendants were made aware of that black mold and either failed to, or improperly remediated that mold, and that, as a result, the Plaintiffs suffered "bodily injury" and "property damage."  *See* Ex. D, ¶¶ 31-32, 34, 37-45, 49, 55, 60, 65, 67-69, 72-73, 78, 84, 87.

106.    Accordingly, comparing the allegations in the Amended Complaint to the terms and conditions of the Policies, Admiral does not owe APNJ a defense in the Underlying Action due to the Policies' Long Term Exposure Exclusions – Joint Form (AD 68 83 04 13) and Exclusionary Joint Form – Asbestos, Lead, Microorganisms, Silica & EMR (AD 68 83 06 21) Endorsements.

107.    Additionally, Admiral has no defense obligation to APNJ with respect to the Underlying Action under Coverage A of the Policies because of their "a.  Expected or Intended Injury" exclusion. Ex. A, 01 POLICY 10; Ex. B, 02 POLICY 013; and Ex. C, 03 POLICY 014.

108.    The Amended Complaint alleges that:

> In 2019, Plaintiffs discovered certain conditions and defects in the Subject Property that had the potential to expose them to illness, danger, and harm. Specifically, in 2019, Plaintiffs found rings of black mold underneath the carpets in the apartment.  Plaintiffs immediately advised Defendants about the moldy carpets in their apartment. Defendants responded by removing the moldy carpets and installing non-absorbent vinyl flooring at which time Plaintiffs

needed to stay in a hotel for a week until the flooring was replaced.  Defendants represented to Plaintiffs that the mold issue was remediated and that it was safe for Plaintiffs to return to the Subject Property without investigating the source of any mold to determine whether it was toxic and performing any necessary remediation.  However, this "quick fix" of removing the carpets did not remediate the toxic mold issue within the apartment and the Plaintiffs unknowingly continued to live in the apartment for the next two (2) years.

Am. Compl. at ¶¶ 39-43.

109.   Thus, the Amended Complaint alleges that the Plaintiffs discovered toxic mold in the apartment as far back as 2019, notified APNJ of same, but that APNJ took insufficient steps to remediate that mold, despite that knowledge, causing Plaintiffs' alleged "bodily injury" and "property damage."

110.   Accordingly, comparing the allegations in Amended Complaint to the terms and conditions of the Policies, the Amended Complaint alleges that the Plaintiffs' "bodily injury" and/or "property damage" was expected and/or intended from APNJ's standpoint, and therefore Admiral has no duty to defend APNJ in the Underlying Action under Coverage A of the Policies.

111.   Additionally, Admiral has no defense obligation to APNJ with respect to the Underlying Action under Coverage B of the Policies.

112.   Coverage B to the Commercial General Liability Coverage Form (CG 00 01 04 13) only provides certain coverage for those sums that an insured would become legally obligated to pay as damages because of "personal and advertising injury" to which the Policies apply during the policy period.  *See* Ex. A, 01 POLICY 14; Ex. B, 02 POLICY 015; and Ex. C, 03 POLICY 018.

113.   The Amended Complaint *does not* allege any (0) of the seven specific, enumerated acts which qualify as "personal and advertising injury," and thus, Admiral has no defense obligation to APNJ with respect to the allegations in the Amended Complaint of the Underlying

Action under Coverage B of the Policies.  Ex. A, 01 POLICY 22; Ex. B, 02 POLICY 023; and Ex. C, 03 POLICY 026.

    **WHEREFORE**, Admiral respectfully requests that the Court enter an Order:

    (a) Declaring that Admiral has no duty under the Policies to defend APNJ in the Underlying Action because:

        (1) APNJ has failed to satisfy its combined $125,000 self-insured retention as to any Policy;

        (2) the "bodily injury" and/or "property damage" alleged in the Amended Complaint occurred and manifested itself before the Policies incepted;

        (3) the Policies' pre-existing damages exclusions bar coverage;

        (4) the Policies' Long Term Exposure Exclusions – Joint Form (AD 68 83 04 13) and Exclusionary Joint Form – Asbestos, Lead, Microorganisms, Silica & EMR (AD 68 83 06 21) Endorsements bar coverage;

        (5) the damages alleged in the Amended Complaint in the Underlying Action are excluded under the "a.  Expected or Intended Injury" exclusion; and

        (6) the Amended Complaint fails to allege a "personal and advertising injury"; and

    (b) Declaring and granting such other and further relief as may be necessary and appropriate under the circumstances, including all other relief available at law or in equity to which Admiral may be entitled and which the Court deems just and proper.

### COUNT II – DECLARATORY JUDGMENT
**(Admiral Has No Duty To Indemnify APNJ For Any Amounts It May Become Liable For In The Underlying Action)**

    114.    Admiral incorporates by reference all preceding paragraphs of the instant complaint as if set forth at length herein.

    115.    As explained herein, there is no duty under the Policies to defend APNJ in the Underlying Action for a multitude of reasons, any one of which serves as an independent and sufficient basis to deny that defense obligation.

    116.    Accordingly, "[b]ecause the duty to defend is broader than the duty to indemnify, there is no duty to indemnify if there is no duty to defend*." Sikirica v. Nationwide Ins. Co*., 416

F.3d 214, 225 (3d Cir. 2005); *see also Travelers Prop. Cas. Co. of Am. v. Mericle*, 486 F. App'x 233, 239 (3d Cir. 2012) ("Finally, as the duty to defend is broader than the duty to indemnify, there is no duty to indemnify if there is no duty to defend. Because we have concluded that Travelers did not have a duty to defend, we agree with the District Court that there was no duty to indemnify." (internal citations omitted)).

117.   Accordingly, Admiral has no duty to indemnify APNJ under the Policies for any amounts it may become obligated to pay as a result of the Underlying Action, including but not limited to any judgment or settlement therein.

**WHEREFORE**, Admiral respectfully requests that the Court enter an Order:

(a) Declaring that Admiral has no duty under the Policies to indemnify APNJ in the Underlying Action because:

(1) APNJ has failed to satisfy its combined $125,000 self-insured retention as to any Policy;

(2) the "bodily injury" and/or "property damage" alleged in the Amended Complaint occurred and manifested itself before the Policies incepted;

(3) the Policies' pre-existing damages exclusions bar coverage;

(4) the Policies' Long Term Exposure Exclusions – Joint Form (AD 68 83 04 13) and Exclusionary Joint Form – Asbestos, Lead, Microorganisms, Silica & EMR (AD 68 83 06 21) Endorsements bar coverage;

(5) the damages alleged in the Amended Complaint in the Underlying Action are excluded under the "a.  Expected or Intended Injury" exclusion; and

(6) the Amended Complaint fails to allege a "personal and advertising injury"; and

(b) Declaring and granting such other and further relief as may be necessary and appropriate under the circumstances, including all other relief available at law or in equity to which Admiral may be entitled and which the Court deems just and proper.

## COUNT III – DECLARATORY JUDGMENT
### (APNJ Is Not An Insured To The Policy)

118.     Admiral realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

119.     APNJ is not an insured to Admiral policy number CA000042289-03.

120.     While APNJ is listed as an additional named insured to the first two Admiral Policies, APNJ Partners, LP is **not** listed as an insured under Endorsement AD07850195 of Admiral policy number CA000042289-03.

121.     As such, Admiral has no duty to defend or indemnify APNJ under Policy number CA000042289-03 for the claims and damages alleged in the Underlying Action.

**WHEREFORE**, Admiral respectfully requests that the Court enter an Order:

(a) Declaring that Admiral has no duty to defend or indemnify APNJ under Policy number CA000042289-03 for the claims and damages alleged in the Underlying Action; and

(b) Declaring and granting such other and further relief as may be necessary and appropriate under the circumstances, including all other relief available at law or in equity to which Admiral may be entitled and which the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Admiral hereby demands a trial by jury of issues so triable.

Respectfully submitted,

**POST & SCHELL, P.C.**

By:   _*/s/ Anthony L. Miscioscia*_

Dated:  May 15, 2024

ANTHONY L. MISCIOSCIA, ESQ.
Atty I.D. No.  69215.
JEFFREY M. BRENNER, ESQ.
Atty I.D. No. 332911
Three Logan Square
1717 Arch Street, 24th Floor
Philadelphia, PA  19103
Phone: (215) 587-1170
amiscioscia@postschell.com
jbrenner@postschell.com
*ATTORNEYS FOR PLAINTIFF ADMIRAL*
*INSURANCE COMPANY ("ADMIRAL")*